1   Susanna L. Chenette (SBN 257914)
2   130 Lucero Way
    Portola Valley, CA 94028
3   Phone: (773) 680-3892
    Email: slchenette@gmail.com
4

5   Attorney for Plaintiff
    LADERA TAXPAYERS FOR INTEGRITY IN GOVERNANCE
6

7                 **UNITED STATES DISTRICT COURT**

8                NORTHERN DISTRICT OF CALIFORNIA

9                   SAN FRANCISCO DIVISION

10

11  LADERA TAXPAYERS FOR                 Case No. 24-cv-2412-WHO
    INTEGRITY IN GOVERNANCE,
12                          Plaintiff,   **PLAINTIFF'S OPPOSITION TO**
                                         **DEFENDANTS' MOTION TO DISMISS**
13  v.

14                                       Date: July 10, 2024
    LAS LOMITAS ELEMENTARY               Time: 2:00 p.m.
15  SCHOOL DISTRICT, in its capacity as a Location: Courtroom 2, 17th Floor
    property owner; LAS LOMITAS
16  ELEMENTARY SCHOOL DISTRICT
    GOVERNING BOARD, in its capacity as a Complaint Filed: April 23, 2024
17  property manager; DR. BETH POLITO, in
    her official capacity as Superintendent of
18  the Las Lomitas Elementary School
    District; HEATHER HOPKINS, in her
19  official capacity as President of the Las
    Lomitas Elementary School District
20  Governing Board; WOODLAND
    SCHOOL; and DR. JENNIFER WARREN,
21  in her official capacity as Head of
    Woodland,
22
                         Defendants.
23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………1

II.     FACTS………………………………………………………………..……1

    A.  Plaintiff's FAC Alleges That Defendant Las Lomitas Elementary School District
Is A "Minimum Expenditure" or "Basic Aid" School District. ……………….…1

    B.  Plaintiff's FAC Alleges That Local Property Owner Las Lomitas Elementary
School District and Local Property Manager LLESD Board Do Not Perform
Central Government Functions When Managing Their Local Property. …………2

    C.  Plaintiff's FAC Alleges Harms and Injuries Suffered Both by Plaintiff and by
Plaintiff's Members………………………………………………………………..2

    D.  Plaintiff's FAC Clearly and Repeatedly Alleges the Viewpoint, Content, and
Time, Place, and Manner Restrictions That Defendants Unlawfully Impose On
Plaintiff's And Its Members' Speech. …………………………………………4

III.    LEGAL ARGUMENT………………………………………………… 8

    A.  Defendants' 11th Amendment Immunity Argument Is Without Merit Because
Defendants Ignore Binding Ninth Circuit Precedent That Finds Immunity Only
For "Maximum" Expenditure Districts, Which LLESD Is Not. ……………...8

        1.  The first "predominant" *Mitchell* factor does not support immunity
because LLESD is a basic-aid, "minimum" funding district, not subject to
any caps on per pupil expenditures. ………………………………………9

        2.  The second *Mitchell* factor does not support immunity because, in this
Action, LLESD/Board is acting as a local property manager, not
performing state functions, and as a basic-aid District, there is less state
oversight/control.
………………………………………………………………11

        3.  The remaining *Mitchell* factors do not support immunity because
Defendants may be sued, may take property in their own name, and are
corporate or municipal actors in their capacity as property owners and
managers. …………………………………………………..………………12

        4.  Heather Hopkins and Beth Polito do not qualify for Eleventh Amendment
immunity because Plaintiff is requesting this Court to command them to do
nothing more than refrain from violating federal law……………………12

    B.  Defendants' Standing Argument Is Baseless Because the FAC Repeatedly and

Sufficiently Alleges Violations of Plaintiff's Constitutional Rights and Plaintiff Is Not Required to Plead Additional Injury or Harm for 1983 Violations.............13

 1. Plaintiff repeatedly alleges the definite injury of "no use" of unlawfully gifted public property throughout the FAC and therefore Plaintiff sufficiently alleges Article III harm. ............................................14

 2. Plaintiff repeatedly alleges injuries to Plaintiff because Defendants act illegally to prevent Plaintiff from exercising its rights on Defendants' limited public forum, while protecting a private school's rights to speak freely. ..............................................................16

 3. Plaintiff is not seeking redress of injuries to third parties because it is alleging its own injuries and the injuries of its members. .................18

C. Defendants Attempt To Argue The Merits Of Plaintiff's First and Fourteenth Amendment Claims, Which Is Impermissible On A Motion To Dismiss. .........19

 1. Defendants' argument around Plaintiff's First and Fourteenth Amendment allegations requires disputing Plaintiff's alleged facts......................  20

 2. Defendants' characterization of Plaintiff's Fourteenth Amendment cause of action is incorrect because it ignores allegations in the FAC..............  23

 3. Defendants' "shotgun pleading" argument constitutes yet another attempt by Defendants to confuse the issues here, to discredit Plaintiff, and to avoid the merits of this case...........................................................  23

D. Defendants' Motion Demonstrates Defendants' Overall Approach of Lack of Concern for Plaintiff or Plaintiff's Rights, As Evidenced by the Fact that Defendants Dedicate Pages of Their MPA Arguing About Administrative Processes and Issues That Do Not Appear in the FAC. 23

IV. CONCLUSION .......................................................................24

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**<u>Federal Cases</u>**

4

*Alabama v. Pugh*
  438 U.S. 781 (1978). ………………………………………………………8

5

6

*ASARCO v. Kadish*
  490 U.S. 605 (1989). ………………………………………………………..14

7

8

*Ashcroft v. Iqbal*

9

  556 U.S. 662 (2009) …………………………………………………12, 16

10

*Barrows v. Jackson*
  346 U.S. 249 (1953) ………………………………………………………..18

11

12

*Belanger v. Madera Unified Sch. Dist.*
  963 F.2d 248 (9th Cir. 1992) ……………………………………………9, 10

13

14

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ………………………………………………………..16

15

16

*Brooks v. Sulphur Springs Valley Elec. Coop.*
  951 F.2d 1050 (9th Cir. 1991) ……………………………………………8

17

18

*CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.*
  880 F.3d 1048 (9th Cir. 2018) ……………………………………………16

19

20

*Clark v. California*
  123 F.3d 1267 (9th Cir. 1997). ……………………………………………8

21

22

*Carne v. Stanislaus Cnty. Animal Servs. Agency*
  445 F. Supp. 3d 772 (E.D. Cal. 2020) ……………………………………18

23

24

*Crampton v. Zabriskie*
  101 U. S. 601 (1880). ………………………………………………………14

25

26

*Data Processing Service v. Camp*

  397 U.S. 150 (1970). ………………………………………………………..17

27

*Doremus v. Board of Education of Hawthorne*
  342 U. S. 429 (1952) ………………………………………………………..14

28

*Dugan v. Rank*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 24-cv-2412-WHO**

372 U.S. 609 (1963) ……………………………………………………………..13

*Ex parte Young*
209 U.S. 123 (1908). ……………………………………………………………..12

*FCC v. Sanders Radio Station*
309 U.S. 470 (1940) …………………………………………………………….18

*Ford Motor Co. v. Department of Treasury of Ind.*
323 U.S. 459 (1945)………………………………………………………………...13

*Frothingham v. Mellon*
262 U.S. 447 (1923) …………………………………………………………….14

*Hoohuli v. Ariyoshi,*
741 F.2d 1169 (9th Cir. 1984) ………………………………………………14, 15

*Humane Society of the United States v. State Bd. of Equalization*
152 Cal.App.4th 349 (2007) …………………………………………………….15

*Hunt v. Washington State Apple Advertising Commission*
432 U.S. 333 (1977)……………………………..………………………………… 19

*Idaho v. Coeur d'Alene Tribe of Idaho*
521 U.S. 261 (1997) …………………………………………………………….8

*Jackson v. Hayakawa*
682 F.2d 1344 (9th Cir. 1982) ………………………………………………….8

*Joint Anti-Fascist Refugee Comm. v. McGrath*
341 U.S. 123 (1951) …………………………………………………………..18

*Kush v. Rutledge*
460 U.S. 719 (1983) …………………………………………………………….8

*Kwan v. SanMedica Int'l*
854 F.3d 1088 (9th Cir. 2017) ...……………………………………………….12

*Laird v. Tatum*
408 U.S. 1 (1972) ……………………………………………………………..17

*Linda R. S. v. Richard D.*
410 U.S. 614 (1973) …………………………………………………………..17

*Mitchell v. Los Angeles Community College District*
861 F.2d 198 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081 (1989)…………………*passim*

*Mount Healthy City School Dist. Bd. of Educ. v. Doyle*
    429 U.S. 274 (1977) ……………………………………………….……..8

*Mullin v. Las Lomitas Elementary School District*
    109 F. App'x 146 (9th Cir. 2004)……………………………………….……10

*NAACP v. Alabama ex rel. Patterson*
    357 U.S. 449 (1958) …………………………………………………………...18

*NAACP v. Button*
    371 U.S. 415 (1963)…………………………………………………….…... 18

*National Motor Freight Traffic Assn., Inc. v. U.S.*
    372 U.S. 246 (1963) …………………………………………………………...18

*Pennhurst State School & Hosp. v. Halderman*
    465 U.S. 89 (1984) …………………………………………………………8, 13

*Powers v Ohio*
    499 U.S. 400 (1991) ………………………………………………………...19

*Rutledge v. Arizona Bd. of Regents*
    660 F.2d 1345 (9th Cir. 1981)………………………………………………8

*Sato v. Orange Cty. Dep't of Educ.*
    861 F.3d 923 (9th Cir. 2017). ………………………………………………9, 10

*Sierra Club v. Morton*
    405 U.S. 727 (1972). …………………………………………………………...18

*Singleton v. Wulff*
    428 U. S. 107 (1976) …………………………………………………………10, 19

*Teixeira v. Cnty. of Alameda*
    873 F.3d 670 (9th Cir. 2017) …………………………………...12, 16, 19, 23

*Tennessee v. Lane*
    541 U.S. 509 (2004) …………………………………………………………..8

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*
    517 U.S. 544 (1996) …………………………………………………………18, 19

*United States v. Richardson*
    418 U.S. 166 (1974) ……………………………………………………15, 16, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. SCRAP*
    412 U.S. 669 (1973) ………………………………………………………………..17

*Va. Office for Prot. & Advocacy v. Stewart*
    563 U.S. 247, 254-55 (2011). …………………………………………………………13

*Warth v. Seldin*
    422 U.S. 490 (1975) …………………………………………………………………...17

*West v. Atkins*
    487 U.S. 42, 48 (1988) ……………………………………………………………13, 20

*Williams v. Gorton*
    529 F.2d 668 (9th Cir. 1976)………………………………………………………13, 20

**State Cases**

*San Bernardino County v. Superior Court*
    239 Cal.App.4th 679 (2015) …………………………………………………………..15

*Schmid v. City and County of San Francisco*
    60 Cal. App. 5th 470 (2021). …………………………………………………………15


**Federal Statutes**

U.S. Constitution, Article III
U.S. Constitution, Amendment I
U.S. Constitution, Amendment XI
U.S. Constitution, Amendment XIV

**State Statutes**
California Code of Civil Procedure, §526a

**Federal Rules**
Federal Rule of Civil Procedure 8
Federal Rule of Civil Procedure 12

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 24-cv-2412-WHO**

## I. __INTRODUCTION__

Defendants' motion to dismiss fails to recite (and apply) the correct analysis for 11th Amendment immunity, incorrectly states that Plaintiff has no injury and cannot assert injuries on behalf of its members (it does and it can), distractingly fixates on an administrative procedure that appears nowhere in Plaintiff's first amended complaint ("FAC"), and improperly disputes Plaintiff's alleged facts. Defendants' motion also confuses the applicable standing analysis here, which is simple Art. III standing.

Accordingly, Defendants' motion to dismiss fails as a matter of law and should be denied. If this Court finds otherwise, Plaintiff respectfully requests leave to amend.

## II. __FACTS__

### A. Plaintiff's FAC Alleges That Defendant Las Lomitas Elementary School District Is A "Minimum Expenditure" or "Basic Aid" School District.

Plaintiff repeatedly alleges that Defendant LLESD is a basic aid (or minimum expenditure) school district. According to the FAC:

> "Las Lomitas Elementary School District ("District" and/or "LLESD") … is a Basic Aid district not subject to any "maximum expenditure" requirements that receives between 90-95% of its funding from non-state sources."

FAC, Dkt. 20, ¶ 20.

> "LLESD is a 'basic need/support/aid' district, meaning that there is no maximum expenditure per student and there is no spending cap, and the funds are not subject to state control."

FAC, Dkt. 20, ¶ 34.

> "LLESD … is a Basic Aid district with a 'minimum' or uncapped expenditure, receiving roughly 5-10% of funds from State sources, thus requiring no damages be paid from State funds[.] "

FAC, Dkt. 20, ¶ 32.

1    "LLESD is a 'Basic Aid' district[.]"

2    FAC, Dkt. 20, ¶ 33.

3        **B. Plaintiff's FAC Alleges That Local Property Owner Las Lomitas Elementary**

4           **School District and Local Property Manager LLESD Board Do Not Perform**

5           **Central Government Functions When Managing Their Local Property.**

6

7        Plaintiff repeatedly alleges that LLESD and the LLESD Board do not perform state

8    functions with regard to their management of their local property. According to the FAC:

9        "[I]n their respective capacities as property owner and manager, LLESD/the
10       Board do not perform central government functions (and all relevant State
         agencies responsible for overseeing the District repeatedly confirmed on
11       numerous occasions to Plaintiff that it had no ability to oversee and/or
         intervene in LLESD/Board's managing of property because that is a local
12       function subject only to local control)[.]"

13

14   FAC, Dkt. 20, ¶ 32.

15       "[H]ere, … the issues do not involve education and there is no State function
         of local land management[.]"
16

17   FAC, Dkt. 20, ¶ 32.

18       **C. Plaintiff's FAC Alleges Harms and Injuries Suffered Both by Plaintiff and by**

19          **Plaintiff's Members.**

20       Plaintiff alleges that each of Defendants LLESD, LLESD Board, Heather Hopkins,

21   and Beth Polito harmed and injured (and continue to harm and injure) Plaintiff as a group and

22   Plaintiff's members. According to the FAC:

23

24       "According to the District's own documents, policies, and actions, the in-use
         Play Areas are a limited public forum. And yet, Plaintiff and its members have
25       been (and continue to be) prevented from hosting meetings, speaking,
         gathering, posting signs, and otherwise using the Play Areas as a civic center."
26

27   FAC, Dkt. 20, ¶ 9.

28       "Such differential treatment constitutes a viewpoint-based restriction on

---

2

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 24-cv-2412-WHO**

speech and rights to assemble that in effect deprives *the District's own students and constituents* (including Plaintiff and its members) of their constitutional rights *on their own public school property* in favor of the interests of a private school. A private school that competed with another private school to lease the Property *without any use of the Play Areas*."

FAC, Dkt. 20, ¶ 9.

"Ladera Taxpayers for Integrity in Governance is a group of District taxpayers who reside in close proximity to the Play Areas in unincorporated San Mateo County in the neighborhood of Ladera and within LLESD. All members have been assessed and paid a tax, including property taxes with bond measures specifically for LLESD, within the past year. All members possess the same harm of being deprived of their constitutional freedoms on the Play Areas by certain Defendants, who act under color of law to cause such deprivation.

FAC, Dkt. 20, ¶ 19.

Nor is closing a limited public forum to Plaintiff and its members, but allowing Woodland to use it exclusively, a valid time, place, and manner restriction because it is content-based; it is not narrowly tailored to achieve a significant government interest; there are no other, let alone ample, other alternative channels for communicating the speaker's message; it does not apply to all groups equally nor is there any rational basis for it; it violates equal protection because it is a restriction on speech that applies to different classes of speech differently because it restricts everyone but Woodland's speech on a limited public forum, without any substantial, rational, legitimate, valid government interest in doing so; nor is it reasonable in light of the Play Areas' purpose to be a recreation and civic center for the community, including Plaintiff and its members.

FAC, Dkt. 20, ¶ 107.

Beth Polito and Heather Hopkins have deprived Plaintiff of the right to use the limited public forum of the Play Areas for First Amendment purposes. Acting jointly and severally, and in collaboration with Jennifer Warren, Beth Polito, and Heather Hopkins allow Woodland to post signs, hold meetings, host events, gather, and express viewpoints at the Play Areas. Acting jointly and severally, and in collaboration with Jennifer Warren, Beth Polito, and Heather Hopkins prevented and restricted (and continue to prevent and restrict) Plaintiff from posting signs, holding meetings, hosting events, gathering, and expressing viewpoints at the Play Areas. In so restricting Plaintiff's and its members' rights to the Play Areas, Beth Polito and Heather Hopkins, in their official and individual capacity, and Jennifer Warren acted (and continue to act) under the color of LLESD District policies, procedures, contracts, Lease/License agreements, and the Education Code (allowing Districts to

control their property and to exercise local control).

FAC, Dkt. 20, ¶ 109.

Preventing Plaintiff, and allowing only Woodland and its students, staff, teachers, administrators, and members, to gather, speak, assemble, post signs, and perform, while restricting Plaintiff's opportunities to do the same, constitutes a viewpoint- and content-based restriction on speech and rights to assembly, and an irrational illegitimate time, place, and manner restriction on speech and rights to assemble in violation of the US and California Constitutions' protections for freedom of speech and rights of assembly.

FAC, Dkt. 20, ¶ 148

Plaintiff has been harmed by Defendants Heather Hopkins' and Beth Polito's breaches of their duties to follow binding ministerial Board Policies and state and federal law in several ways, including but not limited to Plaintiff has been unable to use the Play Areas for years which caused Plaintiff and its members to incur additional costs in driving further to access other recreation areas, inability to recreate, inability to meet and to gather, inability to form a civic center, community disruption, erosion of feelings of community, emotional distress, physical and mental health declines and distress, extensive time spent requesting Board Policies and laws be followed, consulting with experts for help, and other harm, including affecting their ability to be at peace in their own neighborhood

FAC, Dkt. 20, ¶ 175.

All members possess the same harm of being deprived of their constitutional freedoms on the Play Areas by certain Defendants, who act under color of law to cause such deprivation. Per the Lease Agreement, Woodland is required to obtain a Conditional Use Permit ("CUP") from San Mateo County to allow it to operate a private school on the Ladera School Site, which is currently zoned for operating a public school. The Lease Agreement incorporates the CUP in its entirety; the CUP is part of the Lease Agreement. *See* Dkt. 1, Exhs. D-F.

**D.** **Plaintiff's FAC Clearly and Repeatedly Alleges the Viewpoint, Content, and Time, Place, and Manner Restrictions That Defendants Unlawfully Impose On Plaintiff's And Its Members' Speech.**

Plaintiff explains *ad nauseam* in its FAC that Defendants allow one private entity to speak and to assemble on Defendants' limited public forum, but prohibit Plaintiff and its

members from speaking and assembling on Defendants' limited public forum, which thus

restricts specific viewpoints and content, thereby violating Plaintiff's and its members first

and fourteenth amendment rights. Plaintiff also repeatedly alleges that Defendants improperly

restrict the time, place, and manner of its (and its members') speech, without a legitimate

government interest. Per the FAC:

> "Plaintiff and its members have been (and continue to be) prevented from
> hosting meetings, speaking, gathering, posting signs, and otherwise using the
> Play Areas … [b]ut Woodland School … is allowed to do (and does) any and
> all of these things on the Play Areas, all day long, M-F, 7:30am-5pm. …
> Such differential treatment constitutes a viewpoint-based restriction on
> speech and rights to assemble that in effect deprives *the District's own
> students and constituents* (including Plaintiff and its members) of their
> constitutional rights *on their own public school property* in favor of the
> interests of a private school."

FAC, Dkt. 20, ¶¶ 9-11

> "LLESD gifted an extremely valuable license to in-use District property to
> Woodland, for free … result[ing] in viewpoint- and content-based access
> restrictions on a limited public forum that were not reasonable given the
> forum's purpose (to "be made available to the District and the community"
> Ex. B)."

FAC, Dkt. 20, ¶ 69.

> "This gift of a license to the Play Areas violates … Plaintiff's rights to free
> speech, the equal protection clause (by distinguishing between classes of
> speech, Woodland's v. Plaintiff's, creating content- and viewpoint-based
> restrictions, and restricting Plaintiff's and the public's rights of access to the
> limited public forum but leaving other limited public forums open)[.]"

FAC, Dkt. 20, ¶ 73.

> "Preventing Plaintiff from speaking, gathering, assembling, meeting, renting,
> using, posting signs, and/or communicating on the limited-public-forum Play
> Areas, but allowing Woodland to do so, constitutes a viewpoint- and content-
> based restriction on speech that is not narrowly tailored to achieve a
> significant government function and that is not reasonable in light of the
> forum's purpose, which is to provide the public with a civic center and
> recreation. *See Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.
> S. 788, 806 (1985); *see also* Ex. B ("the Governing Board desires to continue

to control the use of the playing fields so that they may be made available to the District and the community"). Serving the needs of a private school and out-of-district private school children is not a significant government interest; a public school has no interest, let alone a significant one, in serving the needs of a private school or promoting/enabling the speech of out-of-district private school children *on public school property*."

FAC, Dkt. 20, ¶ 106.

"Beth Polito and Heather Hopkins have deprived Plaintiff of the right to use the limited public forum of the Play Areas for First Amendment purposes. Acting jointly and severally, and in collaboration with Jennifer Warren, Beth Polito, and Heather Hopkins allow Woodland to post signs, hold meetings, host events, gather, and express viewpoints at the Play Areas. Acting jointly and severally, and in collaboration with Jennifer Warren, Beth Polito, and Heather Hopkins prevented and restricted (and continue to prevent and restrict) Plaintiff from posting signs, holding meetings, hosting events, gathering, and expressing viewpoints at the Play Areas. In so restricting Plaintiff's and its members' rights to the Play Areas, Beth Polito and Heather Hopkins, in their official and individual capacity, and Jennifer Warren acted (and continue to act) under the color of LLESD District policies, procedures, contracts, Lease/License agreements, and the Education Code (allowing Districts to control their property and to exercise local control)."

FAC, Dkt. 20, ¶ 109.

"By letting only one private entity use the Play Areas, which are limited public forums, Heather Hopkins, Beth Polito, Woodland School, and Jennifer Warren allow only one viewpoint to be expressed on its limited public forum. Heather Hopkins, Beth Polito, Woodland School, and Jennifer Warren's acts are performed under the color of LLESD's Board Policies and Bylaws and contracts of letting only Woodland speak, gather, and use the Play Areas."

FAC, Dkt. 20, ¶ 111.

"Allowing only Woodland's free speech and free association on the Play Areas reflects a content- and viewpoint-based restriction on using a limited public forum that is not reasonable in light of the forum's purpose, which, according to the District/Board itself, is "to be available to the District and the community." *See* Ex. B. Such content- and viewpoint-based restrictions are not narrowly tailored to achieve a compelling government interest because there is no government interest in facilitating the operations of a private school, when that private school bid to lease the adjoining property without *any* use of, or access to, the Play Areas and a second bidder would have accepted the same terms for only a few thousand less. Nor is supporting private-school sporting events or protecting access to recreation areas for

private school children who reside outside the District a compelling government interest."

FAC, Dkt. 20, ¶ 113.

"Allowing only Woodland's free speech and free association on the Play Areas is not a valid time, place, and manner restriction because it does not apply to all speech and assembling and there is no rational basis for allowing one private entity only to use a limited public forum when the public seeks simultaneous use and the private entity agreed to lease the adjoining school without any use of the Play Areas whatsoever."

FAC, Dkt. 20, ¶ 114

"Allowing only Woodland and private school students to gather, speak, assemble, post signs, and perform, while restricting Plaintiff's opportunities to do the same, constitutes a viewpoint- and content-based restriction on speech and rights to assembly, and an irrational illegitimate time, place, and manner restriction on speech and rights to assemble that is neither narrowly tailored nor serving a compelling government interest in violation of the US Constitutions' First Amendment protections for freedom of speech and rights of assembly."

FAC, Dkt. 20, ¶ 134.

"Beth Polito, Heather Hopkins, LLESD, and LLESD Board deprive Plaintiff of its First Amendment rights by restricting access to the Play Areas to one viewpoint/speaker only (Woodland)."

FAC, Dkt. 20, ¶ 136.

"Beth Polito, Heather Hopkins, LLESD, and LLESD Board claims [sic] that this unequal treatment of Plaintiff is acceptable because they can do whatever they want with in-use District property, selectively enforce ministerial Board Policies and law, and discriminate between classes/viewpoints/subjects of speakers."

FAC, Dkt. 20, ¶ 142.

"Preventing Plaintiff, and allowing only Woodland and its students, staff, teachers, administrators, and members, to gather, speak, assemble, post signs, and perform, while restricting Plaintiff's opportunities to do the same, constitutes a viewpoint- and content-based restriction on speech and rights to assembly, and an irrational illegitimate time, place, and manner restriction on speech and rights to assemble in violation of the US and California Constitutions' protections for freedom of speech and rights of assembly."

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 24-cv-2412-WHO**

FAC, Dkt. 20, ¶ 148.

**III. LEGAL ARGUMENT**

**A. Defendants' 11th Amendment Immunity Argument Is Without Merit Because Defendants Ignore Binding Ninth Circuit Precedent That Finds Immunity Only For "Maximum" Expenditure Districts, Which LLESD Is Not.**

"The [Eleventh] Amendment . . . enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). It "prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991); *see also Tennessee v. Lane*, 541 U.S. 509, 517 (2004); *Idaho*, 521 U.S. at 267-68; *Clark v. California*, 123 F.3d 1267, 1269 (9th Cir. 1997).

The Eleventh Amendment immunizes agencies of the state from federal court actions for damages or injunctive relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (eleventh amendment proscribes suit against state agencies "regardless of the nature of the relief sought"); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam).

"To determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081 (1989) (*citing Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).

"To determine these factors, the court looks to the way state law treats the entity." *Mitchell*, 861 F.2d 198 (*citing Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981), *aff'd. sub nom*; *Kush v. Rutledge*, 460 U.S. 719 (1983).

In 1992, the Ninth Circuit applied the *Mitchell* factors to hold that a California school

in the central valley was an arm of the state, immune from suit in federal court. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 249 (9th Cir. 1992). Considering the "first and most important factor," the Ninth Circuit placed primary weight on the fact that a money judgment would be satisfied out of state funds because "[u]nlike most states, California school district have budgets that are controlled and funded by the state government rather than the local districts." *Id.* at 251. The Court held that since "the bulk of the school district's budget comes directly from the state school fund, and [since] the property tax revenue in the budget is interchangeable with the state funds and is treated as state funds for all practical purposes[, then u]nder California's revenue limit system, a judgment against the school district would be satisfied from state funds." *Id.* at 252-53.

Since *Belanger*, California's school funding changed dramatically. California now allows school districts to accept less state funding in exchange for avoiding caps on expenditures. Only 3.7% of school districts in California opt-out of more state funding to be able to become "minimum expenditure" or "basic aid" districts, allowing them to accept more money from local sources. *See* Declaration of T. Oliver, ¶ 8. Those districts, such as LLESD, are primarily located in the wealthier Bay Area, coastal, and mountain areas. *Id.*

> 1. The first "predominant" <u>*Mitchell*</u> factor does not support immunity because LLESD is a basic-aid, "minimum" funding district, not subject to any caps on per pupil expenditures.

In 2017, the Ninth Circuit revisited its holding in *Belanger* in light of the California legislature's enactment of AB 97, which provided more local funding control to school districts but was yet to be fully implemented. *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 929-31 (9th Cir. 2017). "Examining the purposes of AB 97, [the Ninth Circuit] find[s] no intent on the part of the California legislature to replace a maximum per-pupil funding formula with a minimum per-pupil formula." *Id.* at 931. The Court concluded that because the "maximum" per-pupil funding formula remained, the California school district was immune from federal suit.

Since *Sato*, AB 97 has now been fully implemented and 3.7% of California school

districts opt-out of state funding and control, opting instead to be "minimum" per pupil funding, or basic aid, districts. Oliver Decl., 8. LLESD is one of these "minimum" funding districts, as alleged. *See* FAC; Oliver Decl., ¶ 9.

*Sato* carefully teases-out the "maximum" v. "minimum" per-pupil funding district distinction and explains that, in schools that have minimum funding, such as LLESD, immunity is disfavored:

> "[I]n states that set a minimum, rather than a maximum, per-pupil funding amount, we have found that the first *Mitchell* factor disfavors immunity for school districts. *See, e.g., Holz*, 347 F.3d at 1184 (Alaska); *Savage*, 343 F.3d at 1044 (Arizona); *Eason*, 303 F.3d at 1143 (Nevada). In Alaska and Nevada, for example, the state guarantees minimum funding for school districts— called the 'basic support guarantee' in Nevada and the 'basic need' in Alaska—and school districts are free to raise additional revenue beyond that amount. *Holz*, 347 F.3d at 1183-84; *Eason*, 303 F.3d at 1142-43. Because per-pupil spending need not be equalized across districts, we held it was 'not necessarily true that an amount withdrawn from a school district's account in order to pay a judgment will be replaced with state money.' *Holz*, 348 F.3d at 1184 (quoting *Eason*, 303 F.3d at 1143). Similarly, in *Savage*, we held the state of Arizona would not be liable for judgments against school districts, as districts' funds 'are not subject to state control, are not subject to a *Belanger*-style spending-cap, and will not be replenished with money out of the state treasury.' 343 F.3d at 1044."

*Sato*, 861 F.3d 930.

Thus, the Ninth Circuit's immunity analysis for the "prominent" first factor turns on whether a school receives "maximum" v. "minimum" per-pupil funding from the state: if it's "maximum," such as in *Sato* and *Belanger*, then the first factor supports immunity; if it is "minimum," such as for LLESD, then immunity is disfavored. *See Sato*, 861 F.3d at 930; *Belanger*, 963 F.2d at 251.

Defendants erroneously ignore this "maximum" v. "minimum" funding distinction, instead seeking to treat California as a single unit. But now with AB 97 implemented fully, California has both "minimum" and "maximum" districts, and some "minimum" districts receive negligible state funding. Oliver Decl., ¶ [ LLESD is one of these districts and thus the Ninth Circuit disfavors immunity for LLESD. *See Sato*, 861 F.3d at 930.

Defendants cite *Mullin v. Las Lomitas Elementary School District* to support a finding

of immunity. 109 F. App'x 146 (9th Cir. 2004). But as *Mullin* explains, "the state sets a

revenue **limit** for each school district based on the number of students the district serves. If a

school district's property tax revenue is less than this revenue limit, the state makes up the

difference by providing equalization." *Id.* at 148 (emphasis added). This is no longer the case

for LLESD; LLESD is no longer subject to revenue or maximum spending limits. Dkt. 20, ¶¶

20, 32-34 ("LLESD is a 'basic need/support/aid' district, meaning that there is no maximum

expenditure per student and there is no spending cap, and the funds are not subject to state

control."); Oliver Decl., ¶ 9. Accordingly, as a minimum funding or basic aid district, the first

and most critical *Mitchell* factor disfavors immunity for LLESD.

    2.   The second *Mitchell* factor does not support immunity because, in this Action,

           LLESD/Board is acting as a local property manager, not performing state

           functions, and as a basic-aid District, there is less state oversight/control.

      The second *Mitchell* factor considers whether the entity performs central government

functions. *Mitchell*, 861 F. 2d at 201. The Ninth Circuit also held that, although "public

schooling is usually considered to be a local governmental function[,] through the state

constitution, statutes, and supreme court decisions, California has made public schooling a

state governmental function." *Id.* at 253-54. The Ninth Circuit's analysis focuses on the

"education" function that a school is performing, and whether the school has local control.

      Here, the LLESD and LLESD Board is operating as a local land owner and local land

manager. As alleged, "[I]n their respective capacities as property owner and manager,

LLESD/the Board do not perform central government functions (and all relevant State

agencies responsible for overseeing the District repeatedly confirmed on numerous occasions

to Plaintiff that it had no ability to oversee and/or intervene in LLESD/Board's managing of

property because that is a local function subject only to local control)[.]" FAC, Dkt. 20, ¶ 32.

"[H]ere, … the issues do not involve education and there is no State function of local land

management[.]" FAC, Dkt. 20, ¶ 32. Accordingly, LLESD and LLESD Board are not

performing any government functions here.

Additionally, because LLESD is a "basic aid" or "minimum funding" District, the State exercises far less control over LLESD than other California schools. Oliver Decl., ¶ 8.

Defendants' argument for immunity rests on disputing these facts, which is improper on a motion to dismiss where all pleaded facts must be assumed true and construed in favor of Plaintiff. *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

3.  The remaining *Mitchell* factors do not support immunity because Defendants may be sued, may take property in their own name, and are corporate or municipal actors in their capacity as property owners and managers.

The third, fourth, and fifth *Mitchell* factors do not support a finding of immunity because (3) LLESD/the Board may sue and be sued (4) LLESD/the Board have the power to take property in LLESD's own name and (5) school districts have the corporate status of State agents for purposes of school administration, but as corporate or municipal actors for purposes of property management, ownership, and development. *See Mitchell*, 861 F.2d at 201; FAC, Dkt. 20, ¶ 32. Defendants fail to show otherwise, and, at this pleading stage, this Court must accept as true the allegations in the complaint and construe them in favor of the Plaintiff. *See Teixeira*, 873 F.3d 678; *Ashcroft*, 556 U.S. at 679; *Kwan*, 854 F.3d at 1096. Defendants fail to show any pleading deficiencies and fail to cite any case law to explain how *Mitchell* factors 3-5 support finding immunity. As pleaded, they do not.

4.  Heather Hopkins and Beth Polito do not qualify for Eleventh Amendment immunity because Plaintiff is requesting this Court to command them to do nothing more than refrain from violating federal law.

Even if LLESD and the LLESD Board were immune here (they are not), Heather Hopkins and Beth Polito have no immunity for their acts. In *Ex parte Young*, the Supreme Court explained that, because an unconstitutional legislative enactment was "void," a state

official who enforces that law "comes into conflict with the superior authority of [the] Constitution," and therefore is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." 209 U.S., 123, 159-60 (1908).

In 2011, the Supreme Court further explained:

"This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to "permit the federal courts to vindicate federal rights." *Pennhurst*, 465 U.S., at 105. It rests on the premise--less delicately called a "fiction," *id.* at 114, n. 25 --that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation, and does not apply "when 'the state is the real, substantial party in interest,' id. at 101 (*quoting Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 464 (1945)), as when the "'judgment sought would expend itself on the public treasury or domain, or interfere with public administration,' 465 U.S., at 101, n. 11 (*quoting Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011).

Here, the alleged causes of action against Heather Hopkins and Beth Polito seek an order commanding them to refrain from violating federal law. Eleventh amendment immunity therefore does not apply to any claims against them.

**B. Defendants' Standing Argument Is Baseless Because the FAC Repeatedly and Sufficiently Alleges Violations of Plaintiff's Constitutional Rights and Plaintiff Is Not Required to Plead Additional Injury or Harm for 1983 Violations.**

From what Plaintiff is able to discern from the garbled presentation, Defendants' standing argument is based on two distinct theories, neither of which has merit: (1) Plaintiff asserts third party rights and (2) Plaintiff lacks federal taxpayer standing. To state a cognizable claim for a Section 1983 violation, a plaintiff must allege (1) the deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976). Plaintiff's federal standing is based on 1983

violations, not taxpayer or third-party claims. Plaintiff properly pleads the two-prongs of 1983 violations ((1) deprivation of a right (2) by one of Defendants acting under color of law) and thus satisfies its pleading burden; Defendants' taxpayer and injury concerns entirely miss the point.

1. <u>Plaintiff repeatedly alleges the definite injury of "no use" of unlawfully gifted public property throughout the FAC and therefore Plaintiff sufficiently alleges Article III harm.</u>

Considering Defendants' taxpayer standing argument first, Plaintiff repeatedly alleges direct pocketbook injuries from Defendants' illegal gifting of public property. *See*, *generally*, FAC. "To establish standing in a state or municipal taxpayer suit under Article III, a plaintiff must allege a direct injury caused by the expenditure of tax dollars or a direct injury or harm sufficient to warrant Article III standing." *ASARCO v. Kadish*, 490 U.S. 605, 613 (1989). The same conclusion may not hold for municipal taxpayers, if it has been shown that the "peculiar relation of the corporate taxpayer to the [municipal] corporation" makes the taxpayer's interest in the application of municipal revenues "direct and immediate." *Frothingham v. Mellon*, 262 U.S. 447, 486-87 (1923); *citing Crampton v. Zabriskie*, 101 U. S. 601 (1880). "[W]e have likened state taxpayers to federal taxpayers, and thus we have refused to confer standing upon a state taxpayer absent a showing of 'direct injury,' pecuniary or otherwise." *ASARCO*, 490 U.S. 605, 614 (*quoting Doremus v. Board of Education of Hawthorne*, 342 U. S. 429 342 U. S. 429, 434 (1952); *see Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1178 (9th Cir. 1984) (pleadings of valid taxpayer suit must "set forth the relationship between taxpayer, tax dollars, and the allegedly illegal government activity"). Plaintiff's FAC satisfies this requirement handily.

Plaintiff pleads that Defendants' gift of Plaintiff's taxpayer-owned public property to a private entity violates the CA Constitution, ministerial LLSED Board Policies, and various non-discretionary state laws. FAC, ¶¶ 152-157. Plaintiff pleads that the public property given to a private entity deprives Plaintiff of its use of the property it pays for (an injury). *Id.*

Plaintiff pleads that Defendants' unlawful gift prevents Defendants from renting the property for additional income (another injury). Plaintiff alleges that its taxpayer property is subsidizing the operations of a private school, which is an improper use of taxpayer funds/property. This subsidy hurts and injures Plaintiff both because, as a Basic Aid district, this subsidy is a direct expenditure of Plaintiff's funds and because Plaintiff and its members cannot use the property.

Defendants cite *United States v. Richardson* to justify dismissal for lack of a discrete injury for standing, but *Richardson* involves a federal taxpayer challenging the constitutionality of legislation without a direct, discrete injury. 418 U.S. 166, 177 (1974).

Defendants cite *Cantrell v. City of Long Beach*, but that case supports finding standing because, unlike those taxpayer claims dismissed for failure to allege any monetary or other damages, here Plaintiff repeatedly alleges damages from subsidizing, gifting, and being deprived use of their public property. *See* FAC; 241 F.3d 674, 683 (9th Cir. 2001) ("To establish standing in a state or municipal taxpayer suit under Article III, a plaintiff must … 'set forth the relationship between taxpayer, tax dollars, and the allegedly illegal government activity.'") (*quoting Hoohuli*, 741 F.2d at 1178. Because Plaintiff alleges harm and injury here, Plaintiff properly alleges Article III standing.

Additionally, Plaintiff properly pleads facts to support its taxpayer action:

Section 526a "establishes the right of a taxpayer plaintiff to maintain an action against any officer of a local agency to obtain a judgment restraining or preventing illegal expenditure, waste, or injury of the estate, funds, or property of said agency." *Schmid v. City and County of San Francisco*, 60 Cal. App. 5th 470, 495, 274 Cal. Rptr. 3d 727 (2021). However, "[a] claim under this statute does not lie to attack exercises of administrative discretion and may not be employed to interfere with policymaking." *Schmid v. City & Cnty. of San Francisco*, 60 Cal. App. 5th 470, 495-96 (2021); *see also San Bernardino County v. Superior Court*, 239 Cal.App.4th 679, 686, 190 Cal. Rptr. 3d 876 (2015) ("[T]axpayer suits are authorized only if the government body has a duty to act and has refused to do so. If it has discretion and chooses not to act, the courts may not interfere with that decision." (internal quotation omitted); *Humane Society of the United States v. State Bd. of Equalization*, 152 Cal.App.4th 349, 356, 61 Cal. Rptr. 3d 277 (2007) ("[S]ection 526a has its limits. In particular, the courts have stressed that the statute should not be

applied to principally 'political' issues or issues involving the exercise of the discretion of either the legislative or executive branches of government.").

*Roark v. Richardson Bay Reg'l Agency*, No. 22-cv-07610-WHO, 2023 U.S. Dist. LEXIS 214691, at *48-49 (N.D. Cal. Dec. 1, 2023) (finding Plaintiff failed to plead his nineteenth cause of action because the municipal acts were discretionary and there was no expenditure to enjoin).

Here, the acts are not discretionary and there is an expenditure to enjoin. Plaintiff alleges an illegal expenditure (a gift) of LLESD property performed by Defendants who have a duty to act and refused to act. *See* FAC, ¶¶ 152-57. The expenditure is ongoing. It harms Plaintiff. The expenditure can (and should) be enjoined.

2.  <u>Plaintiff repeatedly alleges injuries to Plaintiff because Defendants act illegally to prevent Plaintiff from exercising its rights on Defendants' limited public forum, while protecting a private school's rights to speak freely</u>.

Plaintiff's FAC repeatedly explains how it is (and its members are) and has (have) been harmed by Defendants, who could simply reclassify the limited public forum as "surplus" property to close it as a limited public forum, but who instead open it as a limited public forum and restrict certain viewpoints and content of Plaintiff's and its members' speech while allowing Woodland and its members to speak and gather freely. *See* Facts, *supra*, Sections II.C. and D (quoting FAC). Since this Court must accept as true Plaintiff's allegations of harm and construe them in favor of Plaintiff, Defendants' standing argument fails. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.*, 880 F.3d 1048, 1061 (9th Cir. 2018); *Teixeira*, 873 F.3d at 678.

1   Defendants rely on *Laird v. Tatum* to defeat standing, but that case involves

2   "allegations of a subjective chill" that surveillance activity *might* have on speech; nowhere

3   does that plaintiff allege a "claim of specific present objective harm or a threat of specific

4   future harm" as Plaintiff alleges. *See* 408 U.S. 1, 14 (1972); FAC. Defendants seem to ignore

5   the fact that each Defendant, when she/it refuses to provide Plaintiff (and its members) access

6   to the limited public forum, and prevents Plaintiff from using the forum for first amendment

7   purposes, is in-fact depriving Plaintiff (and its members) of their First and Fourteenth

8   amendment rights, which constitutes an actual injury.

9   Defendants also cite *Warth v. Seldin*, in which a group of non-property-owning

10  plaintiffs lacked standing to challenge a zoning ordinance that applied only to

11  builders/developers on the basis that it made property plaintiffs wanted to buy too expensive,

12  but that case explains that a plaintiff must have suffered "some threatened or actual injury

13  resulting from the putatively illegal action…[,]" such as refusing to follow Board Policies and

14  other laws that protect first amendment rights on school grounds. *See* 422 U.S. 490, 499, 95 S.

15  Ct. 2197, 2205 (1975) (*quoting Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973) and *citing

16  Data Processing Service v. Camp*, 397 U.S. 150, 151-154 (1970).

17  *Warth* also explains that the "Art. III judicial power exists only to redress or otherwise

18  to protect against injury to the complaining party, even though the court's judgment may

19  benefit others collaterally." 422 U.S. at 499. In other words, Defendants make a big deal about

20  potential benefit to other third parties, and cite this to demonstrate Plaintiff lacks standing.

21  But, the fact that other entities benefit from Defendants acting lawfully and not violating the

22  Constitution does not, without more, defeat standing. *See* Id. at 499-501 ("the plaintiff still

23  must allege a distinct and palpable injury to himself, even if it is an injury shared by a large

24  class of other possible litigants. … But so long as this requirement is satisfied, persons to

25  whom Congress has granted a right of action, either expressly or by clear implication, may

26  have standing to seek relief on the basis of the legal rights and interests of others, and, indeed,

27  may invoke the general public interest in support of their claim.") (*citing U.S. v. SCRAP*, 412

28

U.S. 669 (1973) *and Sierra Club v. Morton*, 405 U.S. 727, 737 (1972); *FCC v. Sanders Radio Station*, 309 U.S. 470, 477 (1940)).

Defendants also cite *Carne v. Stanislaus Cnty. Animal Servs. Agency*. 445 F. Supp. 3d 772 (E.D. Cal. 2020). Not only is it not precedent here, but also *Carne* involved novel and complex issues of state law (applicability and effect of the Hayden Act as it relates to claims under other statutes), the factual and evidentiary showings for which did not overlap sufficiently with plaintiff's federal 1983 claims, resulting in remand of the state claims. *Id.*, at 775-78. Here, there are no novel state law issues and the evidence for Plaintiff's state and federal claims overlaps almost entirely.

   3.   <u>Plaintiff is not seeking redress of injuries to third parties because it is alleging its own injuries and the injuries of its members.</u>

As alleged repeatedly throughout the FAC, Plaintiff seeks to redress its own injuries and the injuries of its members; it is not bringing suit on behalf of third parties, and Plaintiff is not compelled to disclose its membership. Where the rights of an association and the rights of its members are coextensive, the Supreme Court allows associations to rely on violations of its members' First Amendment associational rights to bar defendants from compelling disclosure of the association's membership lists. *United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 551-52 (1996); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958); *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 183-187 (1951) (Jackson, J., concurring); *Barrows v. Jackson*, 346 U.S. 249, 255-259 (1953); *NAACP v. Button*, 371 U.S. 415, 428, (1963); *National Motor Freight Traffic Assn., Inc. v. U.S.*, 372 U.S. 246, 247 (1963); *Sierra Club*, 405 U.S. at 739.

Here, Defendants impermissibly seek to limit Plaintiff and its members from redressing Defendants' constitutional violations by arguing that Plaintiff's failure to disclose its membership, which the Supreme Court does not require Plaintiff to do, somehow presents a standing or jurisdictional issue. It does not. Defendants are wrong.

Moreover, Plaintiff satisfies all three parts of the *Hunt v. Washington State Apple*

*Advertising Commission* test for assessing when an organization may sue to redress its members' injuries: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 432 U.S. 333, 343 (1977). Here, (a) Plaintiff's members have standing to sue because they are taxpayers, with a pocketbook injury, and Defendants violated their constitutional freedoms under color of law; (b) protecting these interests is germane to the purpose of the organization, which is to protect integrity in governance; and (c) Plaintiff seeks only injunctive and declaratory relief against Heather Hopkins, Beth Polito, LLESD, and the LLESD Board. *See United Food & Commer. Workers Union Local 751*, 517 U.S. at 546 (1996); *Hunt,* 432 U.S. at 343.

Defendants attempt to cast Plaintiff as asserting third party rights and cite *Powers v Ohio,* 499 U.S. 400, 411 (1991) (allowing a criminal defendant to raise the equal protection claims of third-party jurors, who were excluded by the prosecution because of their race) and *Singleton v. Wulff*, 428 U. S. 107, 112-13 (1976) (in an action by two physicians for injunctive relief and a declaration of the unconstitutionality of a Missouri statute that excludes abortions that are not "medically indicated" from the purposes for which Medicaid benefits are available to needy persons, the physicians alleged a sufficiently concrete interest in the outcome of the suit to make it a case or controversy subject to Article III jurisdiction because prevailing will result in benefit to the physicians of receiving payment for the abortions and the State will be out of pocket by the amount of the payments). Not only are those cases inapplicable here, but also Defendants' argument depends on ignoring the facts as-pleaded (that Plaintiff and its members have been harmed, directly), which is improper on a motion to dismiss. *See Teixeira*, 873 F.3d at 678 (the court must accept as true the allegations in the complaint and construe them in favor of the plaintiff); *Iqbal*, 556 U.S. at 679.

**C.  Defendants Attempt To Argue The Merits Of Plaintiff's First and Fourteenth Amendment Claims, Which Is Impermissible On A Motion To Dismiss.**

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

1. <u>Defendants' argument around Plaintiff's First and Fourteenth Amendment allegations requires disputing Plaintiff's alleged facts.</u>

Plaintiff sufficiently alleges 1983 violations. To state a cognizable claim for a Section 1983 violation, a plaintiff must allege (1) the deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Williams*, 529 F.2d 668, 670. Instead of designating the property as "surplus" and closing the limited public forum, Plaintiff explains that Defendants, acting under color of law, prevented (and continue to prevent) Plaintiff and its members, all of whom share the same degree of injury, from speaking, gathering, assembling, or meeting on the limited public forum, but allow a private school and its members to exercise their free speech there. *See* FAC; Facts, *supra*, Section II.C. and D. Plaintiff further alleges that, because Defendants allow one private party to exercise its free speech, but prevent Plaintiff and its members from exercising their free speech, Defendants unlawfully and impermissibly restrict viewpoints and content, and also create content-based time, place, and manner restrictions that are neither narrowly tailored nor serve a legitimate government function (serving the desires of a private school is not a legitimate government function of a public school). *Id.* Accordingly, Plaintiff sufficiently alleges Defendants violated

1  (and continue to violate) 42 USC 1983 by restricting Plaintiff's first amendment and equal

2  protection rights. *Id.*

3      Defendants improperly dispute these facts by saying that there are no restrictions, that

4  such restrictions do not prevent Plaintiff from speaking or gathering (they do), and that there

5  is a legitimate government interest in having these restrictions (Plaintiff alleges there is not; a

6  public school cannot be legitimately interested in protecting the business of a private school

7  on un-leased, non-surplus, in-use public school property that the private entity pays nothing to

8  use).

9      To the extent this Court disagrees, Plaintiff respectfully requests leave to amend with

10  additional facts. On June 3, 2024, LLESD provided documents in response to a public records

11  request from 2023. The small production contained emails between Defendant Dr. Warren (of

12  Woodland School) and LLESD's acting interim superintendent Shannon Potts, wherein Dr.

13  Warren requests LLESD's help to prevent Plaintiff and its members from exercising their

14  rights to free speech: "We also can't have them engaging with prospective families in

15  negative ways (signs, picketing, etc) as they mentioned at the Board meetings." Oliver Decl.,

16  ¶ 2.

17

18      Heather Hopkins, Beth Polito, LLESD Board, and LLESD allow Woodland to paint

19  parking lines on the field and then park Woodland cars there – as many as 75 cars. *Id.* ¶ 3.

20  Plaintiff and its members are not permitted to park on the field or to paint anything on the

21  field; Plaintiff and its members are not even allowed on the field during these times. *Id.*

22  Parking on the field is expressly prohibited by Board Policy 1330 and County Regulation

23  6121, so no legitimate government function exists in allowing this type of expression on the

24  limited public forum. Plaintiff and its members repeatedly request Heather Hopkins, Beth

25  Polito, LLESD Board, and LLESD to stop Woodland's cars from parking on the field. These

26  Defendants refuse to act, nor do they allow Plaintiff and its members equivalent expression on

27  the field. *Id.*

28

Beth Polito and LLESD allowed Woodland to install play structures and water features on the limited public forum. Oliver Decl., ¶ 4. These installations do not appear to comply with the legal safety requirements for public play structures because they lack fall zones and have drops of several feet over exposed concrete protrusions. *Id.* Plaintiff and its members are prohibited from making any installations on the limited public forum. *Id.* There is no legitimate government interest in having unsafe play structures that violate code on a limited public forum. FAC.

Beth Polito and LLESD and Woodland paint bicycle tracks around the limited public forum. *Id.* ¶ 5. Plaintiff and its members are prohibited from doing this. *Id.* Defendants and Woodland hang student art and signs all around the limited public forum. *Id.* Plaintiff and its members are prohibited from doing this; when Plaintiff and its members post signs and art around the limited public forum, Defendants and Woodland immediately remove them. *Id.*

Beth Polito, Heather Hopkins, LLESD, and LLESD Board allow Woodland to host events, meetings, gatherings, and plays on the limited public forum. *Id.* ¶ 6. These Defendants also prohibit Plaintiff and its members from doing this whenever Plaintiff and its members request the same rights and access. *Id.*

Woodland parents donate money to spend on the limited public forum, including decorating it. *Id.* ¶ 7. Plaintiff and its members are prevented from exercising their money-speech in this manner. *Id.*

Accordingly, through their acts and omissions, Beth Polito, Heather Hopkins, LLESD Board, and LLESD institute speaker-based restrictions, which in-fact constitute content- and viewpoint-based restrictions, on speech on the limited public forum. These restrictions are untethered to any legitimate government interest (and some of the authorized speech violates the law). The Defendants here do not have any legitimate interest in allowing a private school to use, control, and prevent Plaintiff's use of public property that the private school is not even paying to use. To the extent this Court finds Plaintiff has insufficiently pleaded facts to support its 1983 claims, Plaintiff requests leave to amend with these and other facts.

2. <u>Defendants' characterization of Plaintiff's Fourteenth Amendment cause of action is incorrect because it ignores allegations in the FAC.</u>

Defendants mischaracterize Plaintiff's fourteenth amendment claim as only seeking to redress the fact that Defendants treat similarly situated community members differently and unequally (by allowing some community members access to their local limited public forum property beginning at 2:20pm but preventing Plaintiff's access), which Plaintiff properly pleads here. *See* FAC; Facts, supra, Section II. But Defendants fail to address Plaintiff's alleged fourteenth amendment violation of creating different classes of allowed speech on a limited public forum and treating both classes differently according to their speaker (Woodland v. Plaintiff), content (Woodland-related issues v. matters of Plaintiff's concern), and viewpoint (whether the field is Woodland's or public property). Plaintiff properly pleaded its 14th Amendment claims here and Defendants do not refute that.

3. <u>Defendants' "shotgun pleading" argument constitutes yet another attempt by Defendants to confuse the issues here, to discredit Plaintiff, and to avoid the merits of this case.</u>

Defendants argue that they cannot discern the complaints here, but the FAC is clear, concise, direct, and sufficiently alleges all causes of action. Rule 8 only requires a plain and short statement of the facts and claims. Fed. R. Civ. Proc. 8. If all Plaintiff's allegations were accepted as true, then this Court could grant the relief Plaintiff seeks. *See Teixeira*, 873 F.3d at 678 (the court must accept as true the allegations in the complaint and construe them in favor of the plaintiff); *Iqbal*, 556 U.S. at 679. Thus Plaintiff has satisfied its pleading requirements and Defendants' "shotgun" arguments are merely a distraction and attempt to avoid the valid – and serious – allegations here by casting doubt on the serious, thoughtful, well-researched, and properly presented facts in the FAC.

**D.** **<u>Defendants' Motion Demonstrates Defendants' Overall Approach of Lack of Concern for Plaintiff or Plaintiff's Rights, Evidenced by the Fact that Defendants Dedicate Pages of Their MPA Arguing About Administrative Processes and</u>**

**Issues That Do Not Appear in the FAC.**

Defendants spend over two pages waxing on about administrative processes and land use issues *that have nothing to do with this dispute*. Defendants make a request for judicial notice about the same issue, which, again, *has nothing to do with this dispute*. There is no mention of a conditional use permit, a permit application, a hearing, or any County-related issues anywhere in the operative legal document here.

Defendants demonstrate a lack of respect for Plaintiff, Plaintiff's rights, and Defendants' own legal duties, contracts, commitments, and obligations. Defendants disregard and ignore County, Federal, and State law as they see fit to achieve their objectives. This is not how a public school district should operate. Even now, in Federal Court, Defendants cannot be bothered to read Plaintiff's FAC. Defendants mischaracterize Plaintiff's fourteenth amendment claims, Plaintiff's alleged injuries, Plaintiff's membership, and Plaintiff's Defendant-specific allegations (of who did what, when).

This is not a joke. There are legitimate, continuing violations of numerous laws here; laws that protect Plaintiff's (and its members') rights.

Laws matter. Contracts matter. And lawyers' professional duties of candor before the tribunal, duties not to mislead and confuse the Court to avoid the merits, and integrity in presenting facts and argument, matter.

## IV.   CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss. Defendants are not immune from suit, Plaintiff has standing, and Plaintiff has properly pleaded its claims. To the extent this Court disagrees, Plaintiff respectfully requests leave to amend.

Dated:  June 11, 2024                                     By: _/s/Susanna Chenette___

                                                                            Susanna Chenette
                                                                            Attorney for Plaintiff

LADERA TAXPAYERS FOR INTEGRITY
IN GOVERNANCE

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 24-cv-2412-WHO**