UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LADERA TAXPAYERS FOR INTEGRITY IN GOVERNANCE,<br><br>  Plaintiff,<br><br>  v.<br><br>LAS LOMITAS ELEMENTARY SCHOOL DISTRICT, et al.,<br><br>  Defendants. | Case No. 24-cv-02412-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

Plaintiff Ladera Taxpayers for Integrity in Governance (the "Ladera Taxpayers") alleges that defendants Las Lomitas Elementary School District ("LLESD" or the "District"), its governing board, and several of its administrators violated the plaintiff's First and Fourteenth Amendment rights, along with California state law, when they leased out part of an LLESD campus to a private school for the private school's exclusive use during school hours. Because LLESD and its agents are arms of the state and thus immune under the Eleventh Amendment from lawsuits in federal court, LLESD's motion to dismiss is GRANTED and the case is dismissed without prejudice to it being refiled in a court of competent jurisdiction.

**BACKGROUND**

Las Lomitas Elementary School District, a public school district, owns the Ladera School Site property (the "School Site"). The School Site is in an unincorporated part of San Mateo County. Ladera Taxpayers is a group of individuals who reside in that same unincorporated area, which the plaintiff refers to as the "Ladera Community." *See* First Amended Complaint ("FAC") [Dkt. No. 20] ¶¶ 19, 35. The District closed the School Site in 1979, and later leased it to the

1  private Woodland School ("Woodland").  *See* Dkt. No. 1-1, Exs. B-D.  Woodland has operated on

2  the School Site since that time.  To operate on the School Site, Woodland regularly applies for and

3  receives Conditional Use Permits ("CUPs") from the County.  *See* County Zoning Regulation §

4  6500.  The most recent CUP was issued this year, after the Planning Commission held a public

5  hearing on June 12, 2024.[1]

6        The District's lease agreement with Woodland includes a lease for the buildings and

7  grounds appurtenant (the "Property") and also an exclusive license to use the playing fields and

8  the blacktop (the "Play Areas") during defined school hours: 7:30 a.m. to 5:00 p.m.  *See* Dkt. No.

9  1-1, Ex. F; FAC ¶¶ 130-37.  For the last 12 years (the term of the current lease), Woodland has

10  held exclusive use of the non-leased portion of the School Site for those hours.  *See id.* Exs. D-F.

11        The Ladera Taxpayers filed its complaint on April 23, 2024, alleging that LLESD's lease

12  with Woodland violated plaintiff's First and Fourteenth Amendment rights as well as several

13  California statutes.  *See* Dkt. No. 1.  The next day, it filed an Ex Parte Application for a

14  Temporary Restraining Order ("TRO"), requesting that I enjoin the Planning Commission from

15  considering Woodland's CUP application because plaintiff asserted it contained an unlawful

16  provision.  *See* Dkt. No. 8.  I held a hearing on May 1, 2024, and denied the TRO because, among

17  other reasons, the Ladera Taxpayers failed to show exigent circumstances necessitating emergency

18  relief.  *See* Dkt. No. 18.  It thereafter amended its complaint, and defendants now move to dismiss

19  all claims.  *See* Motion to Dismiss ("Mot.") [Dkt. No. 22].

**LEGAL STANDARD**

21        Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

22  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

23  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

24  face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when

25  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

---

[1] The Ladera Taxpayers' counsel indicated at oral argument that it is her client's intention to appeal the Planning Commission's decision on the CUP application through the designated appeal process.

2

1   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

2   omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3   In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court

4   accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

5   plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

6   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

7   fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

8   2008).

9         If the court dismisses the complaint, it "should grant leave to amend even if no request to

10  amend the pleading was made, unless it determines that the pleading could not possibly be cured

11  by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

12  this determination, the court should consider factors such as "the presence or absence of undue

13  delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

14  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport

15  Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

16        Where the Eleventh Amendment bars federal suit, the federal court must dismiss the claim

17  without prejudice to it being re-filed in a court of competent jurisdiction.  *See Freeman v. Oakland

18  Unified School Dist.*, 179 F.3d 846, 847 (9th Cir. 1999).

**DISCUSSION**

20        The Ladera Taxpayers' claims fail as a matter of law because school districts in California

21  are arms of the state and are thus protected by the Eleventh Amendment from suit in federal court.

22  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be

23  construed to extend to any suit in law or equity, commenced or prosecuted against one of the

24  United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

25  Const. amend. XI.  "It is well established that agencies of the state are immune under the Eleventh

26  Amendment from private damages or suits for injunctive relief brought in federal court." *Savage v.*

*Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003).[2]

State sovereign immunity does not extend to county and municipal governments unless state law treats them as arms of the state. *Savage*, 343 F.3d at 1040-41. To determine whether a governmental agency is an arm of the state, courts consider the following factors: (i) whether a money judgment would be satisfied out of state funds, (ii) whether the entity performs central governmental functions, (iii) whether the entity may sue or be sued, (iv) whether the entity has the power to take property in its own name or only the name of the state, and (v) the corporate status of the entity. *See Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1982).[3]

In 1992, the Ninth Circuit applied the *Mitchell* factors to hold that a public school in California is an arm of the state, immune from suit in federal court. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) (agreeing with the district court's determination that "the school district is an agent of the state that performs state governmental functions and that a judgment would be satisfied out of state funds."). In 2013, the California Legislature enacted Assembly Bill 97 (AB 97), a massive reform package that was designed to make public education financing more streamlined and decentralize education governance. *See* 2013 Cal. Legis. Serv. ch. 47 (AB 97). In 2017, the Ninth Circuit was asked to clarify whether AB 97 abrogated *Belanger*; it concluded that it did not. *See Sato v. Orange Cty. Dept. of Educ.*, 861 F.3d 923 (9th Cir. 2017). School districts and county offices of education (COEs), the court held, remained arms of the state, immune from suit even after AB 97.

In *Sato,* the Orange County Department of Education ("OCDE"), a school district that is in all relevant ways indistinguishable from LLESD, sought to invoke its right to be immune from suit when a former employee sued for wrongful termination. *See Sato*, 861 F.3d at 931-32. The

---

[2] This immunity applies to both federal and state law claims brought in federal court. *See Sato*, 861 F.3d at 927 (noting that plaintiff had voluntarily dismissed his state law claims against OCDE because he "recogniz[ed] that OCDE's sovereign immunity defense applied equally to his federal and state law claims.").

[3] I will refer to these as the "*Mitchell* factors." Within the test, the first *Mitchell* factor is the most important. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 249 (9th Cir. 1992).

4

1    district court, applying *Belanger*, granted OCDE's motion to dismiss, prompting the plaintiff

2    employee, Sato, to appeal. Sato argued that AB 97 had abrogated *Belanger* and rendered OCDE

3    "no longer an arm of the state for [Eleventh Amendment] immunity purposes." *Id.* at 927. He

4    argued that OCDE's funding structure evinced the California legislature's intent to allow districts

5    and COEs to raise local property tax revenues "above and beyond the state's minimum 'base'

6    support," an intent that he believed rendered such districts no longer arms of the state and

7    therefore unable to invoke Eleventh Amendment immunity. *Id.* at 931.

8        The Ninth Circuit rejected his argument and affirmed dismissal on sovereign immunity

9    grounds, explaining that while AB 97 may have partially decentralized state control over school

10   funding and governance, it did not undercut the conclusion in *Belanger*. The court held that

11   OCDE was still an arm of the state despite the change in its funding structure; it found that the

12   first *Mitchell* factor favored immunity, reasoning that "there is nothing unusual about the fact that

13   OCDE receives some of its funding from local tax dollars." *Id.* at 931-32. It concluded that there

14   was no intent "on the part of the California legislature to replace a maximum per-pupil funding

15   formula with a minimum per-pupil formula," and that "AB 97 did not eliminate the 'centralized'

16   system of 'strict state control' over districts' funding" that was discussed in *Belanger*. *Id.* at 932.

17       *Sato* controls here. The passage of AB 97 in 2013 reformed California public schools'

18   funding and governance by "replac[ing] the old mechanism by which the state funded public

19   education, which relied on a combination of 'revenue limits' funding and 'categorical funding

20   grants,' with the Local Funding Formula ('LCFF')." *Sato*, 861 F.3d at 929 (internal citations

21   omitted). The bill streamlined funding; it did not change California school districts' status as arms

22   of the state for Eleventh Amendment immunity purposes. *See id.* Accordingly, as a governmental

23   agency and an arm of the state, LLESD and its governing officials are protected from suit by the

24   Eleventh Amendment.

25       The Ladera Taxpayers has a different read of *Sato*. It argues that the court found that after

26   AB 97, some school districts in California like LLESD are "minimum" per-pupil funding districts

27   that are not protected by Eleventh Amendment immunity. Oppo. 9-11. But it has misread *Sato*.

28   The Ninth Circuit did *not* leave open the question of whether California hosts both "minimum"

and "maximum" funding districts. To the contrary, it explained that "AB 97 left in place the fundamental elements of *Belanger*: equalization of per-pupil spending and centralized control over local education budgets." *See Sato*, at 932. According to the Ninth Circuit, "[b]ecause the LCFF keeps in place a maximum per-pupil funding formula, state and local funds are still 'hopelessly intertwined.'" *Id.*

I see no meaningful differences between the school district in this case and the school district that the court considered in *Sato*. Las Lomitas Elementary School District is an arm of the state; the defendants here are entitled to Eleventh Amendment immunity from suit in federal court just as OCDE was in *Sato*.[4] This immunity bars all the plaintiff's claims. The motion to dismiss is GRANTED. Because the Ladera Taxpayers cannot successfully amend its complaint, all claims are DISMISSED.[5]

**CONCLUSION**

For the reasons set forth above, the motion to dismiss is GRANTED and the Ladera Taxpayers' claims are DISMISSED without prejudice to its claims being re-filed in a court of competent jurisdiction.

**IT IS SO ORDERED.**

Dated: August 6, 2024



William H. Orrick
United States District Judge

---

[4] Defendant Polito is the superintendent of the district, and defendant Hopkins is the President of the Board. *See* FAC ¶¶ 22-23. Both are undisputedly state officials. This makes them similarly immune in their official capacity from federal suits.

[5] Because I am dismissing on Eleventh Amendment grounds, I will not address defendants' remaining arguments that the Ladera Taxpayers has failed to state plausible claims under the First and Fourteenth Amendments, except to say that I agree that they do not state cognizable causes of action as pleaded. As for plaintiff's state law claims, those claims are also barred in federal court by Eleventh Amendment immunity. *See Sato*, 861 F.3d at 927; *see supra*, n.3. This Order does not preclude the Ladera Taxpayers from refiling its claims in state court.